**Darnell L. CARTER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–200.**

District of Columbia Court of Appeals.

Submitted Feb. 27, 1991.

Decided May 29, 1991.

William L. Peters, appointed by this court, was on the brief, Washington, D.C., for appellant.

Jay B. Stephens, U.S. Atty., and James B. Gunther, John R. Fisher, Roy W. McLeese, III, and Wendy L. Wysong, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before FERREN and WAGNER, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

Appellant, Darnell Carter, was charged with, and convicted of, distribution of a controlled substance (heroin) in violation of D.C.Code § 33–541(a)(1) (1988). On appeal, appellant contends that the trial court erred in denying his motion for judgment of acquittal and that he was illegally sentenced. We affirm.

The government's evidence showed that on July 5, 1989, Officer Vines was working undercover in an apartment building. Vines testified that appellant approached him and asked if he wanted to purchase some "blow" (a name used on the street to

describe a form of cocaine). When Vines indicated that he did, appellant walked over to another individual who gave him a small plastic bag containing a white powder. Appellant gave the bag to Vines, who then identified himself as a police officer. While appellant was detained, Vines performed a field test for cocaine which produced a negative result. Vines then performed a test for heroin, which resulted in a positive reaction.

Appellant testified that Officer Vines approached him looking for cocaine. He also testified that he told Vines that he knew a friend down the hall who was selling, but when the friend saw the officer, he ran away. Appellant further testified that the officer found the heroin on the floor in the hallway.

At the conclusion of the evidence, appellant's motion for judgment of acquittal was denied. The jury was instructed to weigh the evidence, and if it believed beyond a reasonable doubt that appellant distributed a controlled substance, then it should find appellant guilty.

■ When considering a motion for judgment of acquittal, the evidence must be viewed by the court in the light most favorable to the government, giving full recognition to the jury's right to weigh the evidence, draw reasonable inferences, and determine credibility. *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987). Under this standard, the evidence was sufficient to prove beyond a reasonable doubt that appellant distributed heroin to Officer Vines.

The credibility of a witness is ordinarily resolved by the jury. *Staton v. United States*, 466 A.2d 1245, 1251–52 (D.C.1983). *See also Curry, supra,* 520 A.2d at 263. Here, the jury was free to credit the officer's testimony that appellant sold him drugs and discredit appellant's version that the officer found the drugs on the floor.

■ Appellant suggests that his conviction must be reversed because although the undercover officer asked for cocaine, the substance actually received was heroin, and that therefore the government did not prove that he knowingly distributed heroin. This argument is not persuasive. This is not a case where a defendant has been charged with the commission of one offense and convicted of another. *See Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1959). Appellant was charged with the unlawful distribution of a controlled substance in violation of D.C.Code § 33–541(a)(1), and he was convicted of the unlawful distribution of a controlled substance. The Code provision in question does not define the offense in terms of distinctions between the distributions of varying controlled substances.[1] Under the statutory framework, the difference between heroin and cocaine is material only as to an applicable penalty.

■ It is a basic principle of statutory construction that a statute should be construed according to the ordinary meaning of the words. *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc). The plain language of the statute merely requires that the offender know that he is distributing a controlled substance. The legislative history of the Uniform Controlled Substances Act ("UCSA"), D.C.Code § 33–501 *et seq.*, confirms our view of the plain language. The history indicates that *all* described substances with the potential for abuse are intended to be covered by the UCSA. Clearly the UCSA seeks to prohibit the manufacture and distribution of any controlled drug, and it does not require that the offender know what the particular unlawful drug is that he is selling. *See United States v. Gonzalez*, 700 F.2d 196, 200–01 (5th Cir.1983) (defendant only needed knowledge that he possessed a controlled substance to be convicted of possession; government need not prove that defendant

**1.** D.C.Code § 33–541(a)(1) (1988) provides that "it is unlawful for any person knowingly or intentionally to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance."

Subsection (a)(2) provides penalties for violations with respect to controlled substances in various classifications.

knew the exact nature of the substance in which he was dealing).[2] *See also United States v. Lopez-Martinez,* 725 F.2d 471, 474 (9th Cir.), *cert denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984) (defendant does not need to know the exact nature of the substance with which he was dealing).

In *Lopez, supra,* the court analogized the drug laws to a statute prohibiting theft. We find this analogy persuasive. The *Lopez* court looked at the California Penal Code, and noted that there are two degrees of theft, grand and petty. *Cf.* D.C.Code § 22-3812 (1989) (two degrees of theft, first and second). The general rule is if the value of the property taken exceeds $200, then the crime is grand theft; if the value is less than $200, then the crime is petty theft. The punishment for grand theft is more severe than for petty theft, however, knowledge of the value of the property is not an element of the offense of grand theft. "All that is required is a taking of property, intentionally, and with knowledge that one is not entitled to it." *Lopez, supra.* 725 F.2d at 474. Similarly, all that is required under the UCSA is that one intentionally distribute a controlled substance. Because appellant knowingly distributed a controlled sub-

stance, we affirm the trial court's denial of his motion for judgment of acquittal.

■ Appellant also contends that his sentence was illegal because he received the mandatory minimum sentence for distribution of heroin. He argues that since the government proved only that he intended to distribute cocaine, he can only be sentenced for the sale of cocaine. Appellant's intent, in this respect, is likewise irrelevant under D.C.Code § 33-541(c) which sets forth the mandatory minimum sentences for the illegal distribution of specified drugs, which are all prohibited in subsection (a)(1).[3] Section 33-541(c), by its plain language, looks to what substance was distributed, and not to what controlled substance the distributor thought he was distributing. *See Lopez, supra,* 725 F.2d at 473-75 (defendant was properly convicted of possession with intent to distribute heroin even though he claimed that he thought he was possessing marijuana).

Accordingly, the judgment on appeal is *Affirmed.*

---

**2.** The *Gonzalez* case interprets the federal statute, which is substantially similar to the UCSA. Furthermore, the legislative history of the UCSA indicates that it is intended to achieve a greater degree of uniformity between federal and District laws.

**3.** D.C.Code § 33-541(c)(1) provides in pertinent part that, "any person who violates subsection

(a)(1) ... of this section shall be imprisoned for a mandatory-minimum term as hereinafter prescribed ... [thereafter specifying varying penalties for drugs according to classifications in certain schedules]."