Royce R. **ROBINSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 95–CF–758.

District of Columbia Court of Appeals.

Argued June 28, 1996.

Decided May 29, 1997.

Michael L. Spekter, appointed by the court, Washington, DC, for appellant.

Barbara J. Valliere, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III, and Anjali Chaturvedi, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, KING and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

Royce R. Robinson was convicted by a jury of distribution of a controlled substance. On appeal, Robinson contends that his conviction must be reversed because, he claims, the judge constructively amended the indictment. Robinson bases this contention on the fact that the indictment specified that the controlled substance which he allegedly distributed was heroin, whereas the evidence at trial established that the drug was in fact cocaine.

Judge King and I are of the opinion that there was no constructive amendment, that Robinson was not prejudiced by any variance, and that the conviction should therefore be affirmed. In *Wooley v. United States*, 697 A.2d 777 (D.C.1997), however, another division of this court holds today, on substantially similar facts, that the indictment in that case was constructively amended and that Wooley's conviction must be reversed. Judge Ruiz, who is a member of the *Robinson* division, but who does not join this opinion, agrees with the judges in *Wooley* that reversal is required. Because four of the six judges in the two divisions have voted for reversal, and because the two cases are not readily distinguishable, Robinson's conviction is reversed.

I.

On or about June 23, 1994, a grand jury returned an indictment charging Robinson with distribution of a controlled substance (heroin), in violation of D.C.Code § 33–541(a) (1993). The Drug Enforcement Agency subsequently performed a chemical analysis which revealed that the substance Robinson sold to a purchaser was in fact cocaine, and not heroin. On December 29, 1994, more than three months before Robinson's trial, the prosecutor served on Robinson's attorney a Form DEA 7[1] which disclosed the results of the analysis.

On April 14, 1995, during a pretrial hearing, the prosecutor made an oral motion to strike from the indictment, as surplusage, the allegation that the controlled substance distributed by Robinson was heroin. Robinson's attorney opposed the motion. He explicitly disclaimed surprise, noting that he had received the DEA 7 the previous fall. He also acknowledged that the government could properly have secured an indictment for distribution of a controlled substance without identifying the specific substance allegedly distributed, and that the defense could then have obtained information as to the identity of that substance by requesting a bill of particulars. Counsel contended, however, that because the prosecutors "went further—they didn't have to, but they did ... put heroin in the indictment, I submit they're bound by it now."

The trial judge, after a comprehensive review of the authorities, concluded that there was no constructive amendment. She explained that "a variance [only] becomes a constructive amendment when facts at trial go to an essential element of the offense charged and the facts are different from the facts that would support the offense charged in the indictment." Relying, *inter alia*, on *Carter v. United States*, 591 A.2d 233 (D.C. 1991), the judge held that the identity of the drug was not an element of the offense, and she struck as surplusage the allegation in the indictment that the substance distributed by Robinson was heroin.

Three days later, at the commencement of the trial proper, the judge read to the jury the indictment as revised, which contained no reference to heroin. The prosecutor presented evidence showing that Robinson sold

1. The DEA 7 is the Drug Enforcement Agency's "Report of Chain of Custody and Certification of Compliance pursuant to 33 D.C.Code Section 556."

a packet of drugs to one Foster Hamilton.[2] The jury returned a verdict of guilty.[3] This appeal followed.

## II.

Robinson's attorney acknowledged in open court that he received the DEA 7 several months before the case was tried, that he was not surprised at trial by the disclosure that the drug was cocaine, and that Robinson suffered no prejudice. In the absence of prejudice, the case turns on whether the judge constructively amended the indictment by granting a pretrial motion to strike the allegation that the drug distributed by Robinson was heroin. If there was a constructive amendment, then the absence of prejudice to Robinson is irrelevant, for "[d]eprivation of such a basic right [to be tried on the indictment returned by the grand jury] is far too serious to be ... dismissed as harmless error." *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). If, on the other hand, there was no constructive amendment, but merely a variance (or something less than a variance),[4] then reversal is appropriate only upon a showing of prejudice, *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935); *Johnson v. United States*, 613 A.2d 1381, 1384 (D.C.1992), and Robinson's conviction must be affirmed.

A departure from the terms of an indictment[5] "becomes a constructive amendment when facts introduced at trial go to an *essential element* of the offense charged, and the

facts are different from the facts that would support the offense charged in the indictment." *Giles v. United States*, 472 A.2d 881, 883 (D.C.1984) (emphasis in original); *see also Johnson, supra*, 613 A.2d at 1384. Because there can be no constructive amendment unless the departure affects an essential element, *United States v. Rosenthal*, 9 F.3d 1016, 1021 (2d Cir.1993),

> [c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment. A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored.

*United States v. Miller*, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) (citations and internal quotation marks omitted). In *Miller*, the Supreme Court explicitly rejected "the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." *Id.* at 144, 105 S.Ct. at 1819.

In addressing claims of constructive amendment, "[the courts] have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *Rosenthal*, 9 F.3d at 1021–22 (citations and internal quotation marks omitted). A constructive amendment of the indictment occurs if, and only if, the prosecution relies at

---

**2.** The transaction between Robinson and Hamilton was described by an officer who was watching from a concealed observation point. Other officers recovered cocaine from Hamilton. Hamilton testified for the defense, claiming that he had found the drugs, and denying that he had bought them from Robinson. In light of their verdict, the jurors must have disbelieved Hamilton's testimony.

**3.** The judge instructed the jury that the government was required to prove that the substance distributed by Robinson was cocaine.

**4.** We have stated that removal of surplusage from an indictment is neither a constructive amendment nor a variance. *See, e.g., Williams v. United States*, 641 A.2d 479, 482 n. 3 (D.C.1994) (citations omitted).

**5.** In the present case, there was technically no departure at trial from the terms of the indictment. The indictment was amended before the trial began, and Robinson was tried on an indictment that included no allegation that the drug he distributed was heroin. In that respect, this case differs from *Wooley*, for in that case the indictment was not formally amended in advance of trial. We are constrained to acknowledge, however, that if there was an unconstitutional constructive amendment requiring reversal in *Wooley*—a proposition with which we disagree—then Robinson's conviction likewise cannot stand, for the distinction between the two cases goes to form and not to substance.

trial on a "complex of facts distinctly different from that which the grand jury set forth in the indictment." *Jackson v. United States,* 123 U.S.App. D.C. 276, 279, 359 F.2d 260, 263, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966) (distinguishing *Stirone* ).

We have held that the identity of the controlled substance is not an element of the offense of distribution. In *Carter, supra,* the defendant sought reversal of his conviction because, according to him, the proof showed that although he had sold heroin to an undercover police officer, he did not know that the substance was in fact heroin and believed instead that it was cocaine. This court rejected the contention that the prosecution was required to prove that the defendant knew the identity of the drug he was selling:

> This is not a case where a defendant has been charged with the commission of one offense and convicted of another. *See Stirone v. United States,* [*supra* ]. Appellant was charged with the unlawful distribution of a controlled substance in violation of D.C.Code § 33–541(a)(1), and he was convicted of the unlawful distribution of a controlled substance. *The Code provision in question does not define the offense in terms of distinctions between the distributions of varying controlled substances. Under the statutory framework, the difference between heroin and cocaine is material only as to an applicable penalty.*

591 A.2d at 234 (emphasis added; footnote omitted); *accord, United States v. Adams,* 759 F.2d 1099, 1116–17 (3d Cir.), *cert. denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985) (count of indictment sufficient although it did not identify specific drug).

Read together with *Miller, Giles, Johnson,* and *Jackson, Carter* supports affirmance of Robinson's conviction. Because the identity of the controlled substance is not an element of the offense, because Robinson indisputably

received ample notice of the "core of criminality" with which he was charged, and because the prosecution did not rely on a complex of facts distinctly different from those alleged in the indictment, the judge's striking the heroin allegation from the charging instrument did not constitute a constructive amendment.

Our conclusion is bolstered by Judge Gurfein's excellent opinion for the court in *United States v. Knuckles,* 581 F.2d 305 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). In *Knuckles,* the defendants were indicted for distribution of heroin and possession of heroin with intent to distribute it. There was evidence, however, that the drugs in question may have been cocaine. The judge charged the jurors that they could find the defendants guilty if the substance was cocaine. On appeal, the defendants argued that the judge's charge "resulted in an informal but impermissible amendment of the indictment." *Id.* at 310. The court disagreed:

> [T]he only variance alleged by the appellants is the exact nature of the substance involved, heroin or cocaine; the time, place, people, and object proved at trial are in all respects those alleged in Count Two of the indictment. Whether the substance was cocaine or heroin makes no difference under 21 U.S.C. § 841, the statute cited in Count Two of the indictment. Such a variance, affecting neither the Government's case nor the sentence imposed,[6] cannot have prejudiced the ability of the defendants to make their defense to the charge that they violated 21 U.S.C. § 841.

*Id.* at 311 (citations and footnote omitted). Judge Gurfein distinguished *Stirone,* the case which animates Judge Ferren's opinion in *Wooley,* on grounds equally applicable to the case at bar:

> Appellant relies upon *Stirone v. United States,* [*supra* ], for a rule that a defendant

---

**6.** Unlike the federal statute, the District's Controlled Substances Act provided at the relevant times that the punishment for distribution of heroin was potentially different from that for distribution of cocaine. *See Wooley, supra,* opinion of Farrell, J., 697 A.2d at 787. We have held, however, that this difference in punishment does not make the identity of the substance an ele-

ment of the offense and that the "different offense" analysis of *Stirone* is not implicated. *Carter, supra,* 591 A.2d at 234. Considering the *Knuckles* opinion as a whole, we do not believe that the result would have been different if the prosecution had been brought pursuant to the District's statute rather than its federal counterpart.

cannot be tried on charges not made in the indictment. Stirone was charged in the indictment with a violation of the Hobbs Act, 18 U.S.C. § 1951, by interference with interstate shipments of sand into Pennsylvania. The trial court also allowed proof of interference with shipments of steel from Pennsylvania into other states, and charged the jury that it could convict if it found that Stirone had interfered with either the sand or the steel shipments. The Supreme Court reversed Stirone's conviction, reasoning that the courts could not presume to know that the grand jury would have also indicted Stirone for the interference with the steel shipments.

The essence of the problem in *Stirone* was that an element of the Hobbs Act violation, necessary to make out a federal crime, was interference with interstate commerce. The jury charge, which allowed a conviction on a set of facts wholly unrelated to the facts charged, led the Court to conclude that the grand jury might not have agreed that the uncharged set of facts constituted a sufficient interference with interstate commerce for a Hobbs Act violation to have occurred.

*Id.* at 312. After quoting with approval from Judge Leventhal's "distinctly different complex of facts" analysis in *Jackson*, 123 U.S.App. D.C. at 279, 359 F.2d at 263, discussed at page 789, *supra*, Judge Gurfein concluded:

> The single set of facts involved here was a tabling operation for a controlled substance at a particular time and place. *The operative facts were the same whether the controlled substance was heroin or cocaine.* We conclude that the variance was not substantial....

*Id.* (emphasis added).

*Knuckles* is fully consistent with other relevant case law. *See, e.g., United States v. McIntosh,* 23 F.3d 1454, 1456–57 (8th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994) (specific type of firearm is not an element of offense of possession of a firearm during a crime of violence; incorrect specification of weapon as "Arminius Western Star" may be struck as surplusage, and denial of motion for judgment of acquittal was proper notwithstanding prosecution's failure to prove allegation in indictment that weapon was "Arminius Western Star"); *United States v. Hamilton,* 992 F.2d 1126, 1129–30 & n. 5 (10th Cir.1993) (indictment alleged that defendant used .38 caliber revolver in robbery; court held that even if prosecution failed to prove that the firearm used was a .38 caliber revolver, there was no constructive amendment, because type of weapon is not an element of offense and "neither the evidence at trial nor the jury instructions implied that Defendant could be convicted of anything other than knowingly using and carrying a firearm during and in relation to a crime of violence"); *United States v. Van Buren,* 513 F.2d 1327 (10th Cir.1975) (defendant who had been indicted for distribution of cocaine claimed fatal variance on the ground that proof showed distribution of cocaine hydrochloride, not cocaine; court held that there was no variance because cocaine hydrochloride "is a prohibited drug under the subject statute"); *United States v. Moser,* 509 F.2d 1089, 1091–92· (7th Cir.1975) (indictment charged defendants with distribution of LSD; evidence showed that defendants described the material as psilocybin and mescaline; court rejected defendants' claim of fatal variance, holding that distribution of all three substances was prohibited by 21 U.S.C. § 841, and that defendants' substantial rights therefore were not affected). Given the similarity between the instant case and *Knuckles,* and in light of what we view as the weight of authority, we are satisfied that there was no constructive amendment in this case.

## III.

Our view that Robinson's conviction should be affirmed is consistent not only with the case law, but also with common sense.

"A criminal prosecution is more than a game in which the government may be checkmated and the game lost merely because its officers have not played according to rule." *McGuire v. United States,* 273 U.S. 95, 99, 47 S.Ct. 259, 260, 71 L.Ed. 556 (1927); *see also United States v. Ceccolini,* 435 U.S. 268, 279, 98 S.Ct. 1054, 1061–62, 55 L.Ed.2d 268 (1978). In a criminal proceeding, as in a

civil case, a single misstep by counsel in the formulation of pleadings should not be decisive to the outcome. *Cf. Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

In the present case, the jury found Robinson guilty on the basis of abundant evidence. The grounds asserted for reversal of his conviction have no relation to his guilt. There is no claim that Robinson's trial was unfair, or that he was unconstitutionally searched or seized, or that the government abused him in any other way. Rather, Robinson demands that his conviction be set aside on the basis of an inadvertent error in the indictment. This error was brought to his counsel's attention more than three months before the jury was sworn and did not have the slightest effect on his readiness for trial.

There exists no rational basis for believing that the grand jury would have refused to indict Robinson if correct information had been provided as to the identity of the controlled substance. On the contrary, we must presume that the members of that body would have acted in conformity with their oaths, and that they would have made their decision to indict or not to indict on the basis of the evidence, without indulging some hypothesized and highly improbable private prejudice regarding any perceived differences in culpability between heroin and cocaine. The case thus boils down to the question whether we must reverse the conviction of a guilty defendant because of a pleading error which was corrected before trial, and which did not make the slightest difference to the conduct of the case.

Robinson effectively conceded in the trial court that the original indictment would have been sufficient if it had omitted any mention of heroin, and the authorities bear him out. See discussion at p. 788, *supra.* If the grand jury had indicted him for distribution of an unspecified controlled substance, and if the identity of that substance had been disclosed in a bill of particulars more than three months before trial, then Robinson would have had no conceivable basis for complaint. In our view, there is no appreciable or legally significant difference between the foregoing scenario and the present case.

Robinson bases his appeal on the Grand Jury Clause of the Fifth Amendment. He claims that the Constitution requires reversal of his conviction regardless of the absence of prejudice. His constitutional claim must stand or fall on the proposition that the trial judge violated the Fifth Amendment by granting the prosecutor's pretrial motion to strike from the indictment as surplusage an allegation not affecting any element of the offense alleged. We think it inconceivable that those who wrote the Fifth Amendment could have intended such a result. In our view, Robinson's position trivializes an important constitutional protection. Judicial acceptance of that position recalls the days when appellate courts were "impregnable citadels of technicality" and ordained that "any error in the course of a proceeding, no matter how technical, required either the trial court or the appellate court to order a new trial." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2881, at 441–42 (1995) (footnote omitted); *see also R. & G. Orthopedic Appliances and Prosthetics, Inc. v. Curtin,* 596 A.2d 530, 539 (D.C.1991) (quoting WRIGHT & MILLER).

"The reversal of a conviction entails substantial social costs." *United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986). These costs are acceptable where the defendant has been denied a fair determination of the issue of guilt or innocence, but "the balance of interests tips decidedly the other way when an error has had no effect on the outcome of the trial." *Id.* "[A]ppellate reversal of a conviction for an alleged error which has played no role in bringing about the judgment—and that, in our view, is exactly what [Robinson] is seeking here—'encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" *Allen v. United States,* 603 A.2d 1219, 1228 (D.C.1992) (en banc) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

"[W]e do not believe that the law is or should be so preoccupied with theory that practical consequences must be disregarded."

*Helm v. United States*, 555 A.2d 465, 469 (D.C.1989). The courts in *Jackson, Knuckles,* and the other cases on which we rely, delivered principled decisions, and they wisely tempered considerations of doctrinal purity in the abstract with a measure of earthy realism as to the probable intent of the framers of the Constitution in the kind of situation here presented. We ought to do the same.

### IV.

Judge King and I, as previously noted, would affirm the judgment. Our colleagues do not agree with us, however, and four of the six judges in this case and in *Wooley* favor reversal of the two convictions. Of this four-judge majority, Judge Farrell, with whom Judge Steadman joins, reaches that result on case-specific and comparatively narrow grounds which are predicated, as we understand the opinion, on the different treatment of various drugs under the District's Controlled Substances Act. *See Wooley,* 697 A.2d at 786–787 (Farrell, J., concurring). As between Judge Farrell's analysis and the broader grounds relied upon by Judges Ferren and Ruiz,[7] Judge King and I vote for the former over the latter. This means that only two of the six judges in *Wooley* and *Robinson* have adopted the expansive reading of *Stirone* (and the skeptical approach to *Jackson* and *Knuckles*) articulated by Judge Ferren.

### V.

For the foregoing reasons, and notwithstanding the views of the judges who join this opinion, Robinson's conviction is re-

versed, and the case is remanded for dismissal of the indictment charging Robinson with distribution of heroin, without prejudice to the return of a new indictment charging Robinson with distribution of cocaine.

*So ordered.*[8]

RUIZ, Associate Judge, concurring:

I agree that the judgment in this case, like in *Wooley v. United States*, 697 A.2d 777, (D.C.1997), also decided today, must be reversed because we cannot have confidence that the crime of which Wooley was convicted is the same as the crime for which he was indicted by the grand jury. In this case, the trial court, at the instance of the prosecutor, deleted the language in the indictment which specified the drug which Robinson was charged with distributing (heroin) in order to allow the prosecutor to prove, at trial, that Robinson was distributing cocaine. The question in this case is not whether there has been a constructive amendment of the grand jury's indictment, but whether the *actual* amendment of the indictment in this case requires reversal.[1] There is no dispute that the trial court altered the charging terms of the indictment to fit facts developed by the prosecution subsequent to presentation to the grand jury. The stark circumstances of this case crystallize the danger of my two "concurring" colleagues' (really dissenting) conclusion that, absent prejudice to Robinson, his conviction should not be set aside— once found guilty beyond a reasonable doubt by a jury after a fair trial—because of "a single misstep" by the prosecution and "an inadvertent error in the indictment." *See ante* at 791, 792. Under that view, the grand jury is but a quaint technicality. That kind

---

7. These judges appear to believe that *Knuckles* was wrongly decided. *See Wooley,* 697 A.2d at 783 (opinion of Ferren, J.). Judges Farrell and Steadman distinguish *Knuckles, id.* at 786–787 n. 3 (Farrell, J., concurring), but do not necessarily reject Judge Gurfein's reasoning.

8. Robinson's contention that the judge erred in denying his motion for judgment of acquittal is without merit, for the jury had the right to credit the prosecution witnesses and to disbelieve Foster Hamilton's testimony. *Patton v. United States,* 633 A.2d 800, 820 (D.C.1993). Because Robinson's conviction is being reversed, we do not reach Robinson's complaint regarding the

Judgment and Commitment Order, which erroneously stated that he had been convicted of distribution of heroin.

1. As the government's brief states, amendments occur "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *Johnson v. United States,* 613 A.2d 1381, 1384 (D.C.1992). In this case, the charging terms of the indictment were literally altered by the court at the request of the prosecutor and over the objection of defense counsel.

of reasoning, though facially appealing as "common sense" with the benefit of 20/20 hindsight provided through the lenses of a petit jury's verdict, simply misses the point of the protection offered by the Fifth Amendment's Grand Jury Clause.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The language of the amendment limiting the government's power to "h[o]ld to answer" only those persons who have been indicted by a grand jury imposes a *condition precedent* on the government's authority to prosecute. *Ex parte Bain*, 121 U.S. 1, 12–13, 7 S.Ct. 781, 787, 30 L.Ed. 849 (1887), *overruled on separate grounds by United States v. Miller*, 471 U.S. 130, 144, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985). Thus, a petit jury's verdict cannot retroactively cure an unauthorized prosecution. Moreover, under traditional concepts of constitutional error analysis, where there has been a violation of a constitutionally-mandated "structural" feature of a criminal proceeding, harmless error analysis is inapplicable. As a result, reversal is required. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (holding unlawful exclusion of grand jurors of defendant's race to be structural error).[2]

Each of the concurring opinions in *Wooley* explains in slightly different terms how to distinguish between permissible and impermissible differences between what is contained in the grand jury's indictment and the case presented at trial. That is the difficult question, defining when the constitutional line has been crossed in a particular case. There is no need to repeat their painstaking analyses here. What is worth bearing in mind, however, is that any analysis must be consistent with the purpose of the Grand Jury Clause to provide a community-based check before the full force of the law enforcement power of the federal government—prosecutors and judges—can be brought to bear on a particular defendant.[3] Thus, any analysis that permits supplanting the judgment of the grand jury by a prosecutor or a judge defeats the very purpose of the protection intended by the Fifth Amendment. *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). Whether the inquiry is framed in terms of whether there has been a "broadening" of the charge, as Judge Ferren's opinion in *Wooley* emphasizes, or whether the grand jury was presented with the same "nucleus of operative facts" or the "same crime legally understood" as the petit jury, as Judge Farrell's concurrence in *Wooley* specifies, the underlying question is the same: do we know, with the certainty required to safeguard the Fifth Amendment's structural constitutional protection, that this prosecution is what the grand jury intended when it returned an indictment against this defendant? That is a different question from asking what the grand jury *might* have done *if* it had been presented with the same facts presented at trial. Because the grand jury's action is a condition precedent to the government's

---

2. Harmlessness analysis is applied under the plain error rule where there has been no timely objection. *Johnson v. United States*, —— U.S. ——, ———–———, 117 S.Ct. 1544, 1548–50, 137 L.Ed.2d 718 (1997). In this case, there was a timely objection.

3. The grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty; notwithstanding periodic criticism, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reck-

less or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' *Costello v. United States*, 350 U.S. 359, 362 [76 S.Ct. 406, 408, 100 L.Ed. 397] (1956). Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.
*United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976).

prosecution, the trial must have proceeded as the grand jury intended. What the grand jury intended, of course, can only be based on the evidence presented to it. In most cases, however, a reviewing court is ignorant of that fact.

It is in this context that I take issue with *Jackson v. United States*, 123 U.S.App. D.C. 276, 359 F.2d 260 (1966), relied upon by both concurring opinions in *Wooley* and by my colleagues in this case. In *Jackson*, Judge Leventhal concludes that the crime of which the jury convicted was contained within the same robbery statute, although not within the specific statutory language quoted in the grand jury's indictment. *Id.* at 278, 359 F.2d at 262. That conclusion, unassailable from the face of the indictment itself, still does not address the question whether the defendant was convicted of the "same offense," in the factual sense of the same conduct, for which the grand jury indicted him. *See Stirone v. United States*, 361 U.S. 212, 215–17, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960). Thus, Judge Leventhal asserts that, unlike in *Stirone*, both the grand jury and the petit jury in *Jackson* were presented with "a single set of facts," *Jackson, supra,* 123 U.S.App. D.C. at 279, 359 F.2d at 263, and that at trial the prosecution did "not add a new set of facts," *Id.* at 280, 359 F.2d at 264. Thus, there was no fatal variance.

I do not quarrel with *Jackson*'s legal reasoning, but I question whether it can be employed in the usual case. *Jackson*'s sweeping assertion distinguishing it from *Stirone* is unwarranted and impermissible; there is simply nothing in the language of the indictment itself nor in Judge Leventhal's opinion to justify the statement that the same facts were presented at trial as were presented to the grand jury.[1] The court in *Jackson*, like the court in *Wooley* and in this case, simply have no information whatsoever about what evidence was presented to the grand jury other than as can be gleaned from the indictment itself. Another appellate judge considering the indictment in *Jackson* could have, and, I submit, more justifiably

would have, come to exactly the opposite conclusion that Judge Leventhal did. Based on the only known fact that the grand jury indicted for a crime committed "by force and violence, and against resistance and by putting in fear," *id.* at 278, 359 F.2d at 262, the logical assumption has to be that the grand jury was presented with evidence that the defendant acted in a manner consistent with that description. The type of aggressive confrontation that would satisfy a description of "against resistance and by putting in fear," however, is unlikely to satisfy the description of "sudden or stealthy seizure or snatching" that formed the basis on which the defendant was actually tried and convicted involving the surreptitious taking of the complainant's wallet from her bag while she waited at a bus stop. *Id.* at 277, 359 F.2d at 261. Therefore, it is not at all self-evident from the language in the indictment that the same facts were presented to both grand and petit juries. The kind of hypothesizing upon which *Jackson*'s analysis is based places the judge in the untenable position of evaluating unknown evidence that the judge can only attempt to guess at from the face of the indictment.

Concerns for judicial efficiency can create a temptation to affirm the conviction of a defendant found by a jury to be guilty beyond a reasonable doubt. In this difficult area of the law, where the best-intentioned judicial assumptions easily can slip into impermissible judicial second-guessing of the grand jury, it is important that judicial opinions come down squarely in favor of constitutionally sound practice. Judges ought not to engage in reading grand jury tea leaves when reindictment provides the government with a simple and direct means to ensure that its prosecution is constitutionally authorized.

---

4. The court did not refer to any facts underlying the indictment, but summarized the case as one involving "a single set of facts, the obtaining of property of the complaining witness on the date in question by force and violence." *Jackson, supra,* 123 U.S.App. at 279, 359 F.2d at 263.