[No. 20642-4-III.   Division Three.   December 19, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. JAY LAWRENCE GOODMAN, *Appellant*.

*James E. Egan*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

BROWN, C.J. — Following a bench trial, the Benton County Superior Court found Jay Goodman guilty of pos-

session of a controlled substance, methamphetamine, with intent to deliver. The amended information alleged possession of "meth" rather than "methamphetamine." On appeal, Mr. Goodman mainly argues the identity of the involved controlled substance is an essential element of possession with intent to deliver. We decide for the first time it is not. We reject his other assignments of error in the unpublished portion of this opinion. Accordingly, we affirm.

## FACTS

In August 2001, the State's first information alleged Jay Goodman "did unlawfully possess with intent to deliver a controlled substance, to wit: Methamphetamine." Clerk's Papers (CP) at 46. On October 15, 2001 at the stipulated facts bench trial, the State filed, without objection, an amended information that alleged possession of "a controlled substance with intent to deliver, to wit: meth." CP at 26. The amended information added a school zone allegation.

Mr. Goodman stipulated to the school zone allegation, but argued the stipulated evidence did not produce sufficient indicia of intent to deliver; i.e., the amount of contraband was small, and there was no evidence of financial records, telephone lists, pagers, or other drug delivery paraphernalia. The trial court found Mr. Goodman guilty as charged and entered consistent findings of fact and conclusions of law. Mr. Goodman's sentence included a 24-month school zone enhancement. He appealed.

## ANALYSIS

### Sufficiency of Charging Document

The unique issue is whether the amended information was deficient because it described the controlled substance as "meth" rather than "methamphetamine."

■ "The Sixth Amendment to the United States Constitution and article I, section 22 (amend. 10) of the Washing-

ton Constitution require that a charging document include all essential elements of a crime, statutory and nonstatutory, so as to inform the defendant of the charges against him and to allow him to prepare his defense." *State v. Phillips*, 98 Wn. App. 936, 939, 991 P.2d 1195 (2000) (citing *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991); *State v. Ralph*, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997)). "Therefore an accused has a protected right, under our state and federal charters, to be informed of the criminal charge against him so he will be able to prepare and mount a defense at trial." *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000) (citing *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985)).

"Every material element of the charge, along with all essential supporting facts, must be put forth with clarity." *Id.* at 425 (citing CrR 2.1(a)(1); *Kjorsvik*, 117 Wn.2d at 97). "An information omitting essential elements charges no crime at all." *State v. Sutherland*, 104 Wn. App. 122, 130, 15 P.3d 1051 (2001) (citing *State v. Vangerpen*, 125 Wn.2d 782, 795, 888 P.2d 1177 (1995); *Phillips*, 98 Wn. App. at 939-41; *State v. Hull*, 83 Wn. App. 786, 802, 924 P.2d 375 (1996)).

The threshold question is whether the name of the concerned controlled substance is a necessary element when the State alleges a single count of possession of a controlled substance with intent to deliver. Mr. Goodman cites no authority in support of his argument that the State must name the "specific controlled substance charged." Appellant's Br. at 24. This is another way of asking whether the information must allege any specific controlled substance at all, our unique inquiry.

Division Two of this court recognized the issue in the jury instruction context but did not resolve it, relying instead on the law of the case doctrine to determine evidence sufficiency. *State v. Ong*, 88 Wn. App. 572, 577-78, 945 P.2d 749 (1997). The Washington pattern jury instruction describing the relevant elements allows the trial court the option of using the general term "controlled substance" or the name

of the specific controlled substance. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.06, at 644 (2d ed. 1994) (WPIC). But the WPIC drafters observed also "[i]t is not clear whether the defendant must know that the substance was a specific substance or whether the defendant must know that the substance was a controlled substance." *Id.* cmt. at 645. Division Two later held that the State need not allege and prove the defendant knew he was delivering a particular controlled substance. *State v. Nunez-Martinez*, 90 Wn. App. 250, 255-56, 951 P.2d 823 (1998).

Other jurisdictions vary on this issue. The Ohio Supreme Court held the drug trafficking statute of that state required the charging document to allege the specific controlled substance. *State v. Headley*, 6 Ohio St. 3d 475, 453 N.E.2d 716, 720 (1983). The Ohio statute contained a general prohibition against "the selling, distribution, production or possession of certain controlled substances, or drugs, for certain purposes." *Id.* "The severity of the offense is dependent upon the type of drug involved." *Id.* Certain drugs would result in a conviction for "aggravated trafficking" while other drugs would result in the lesser offense of "trafficking in drugs." *Id.*

The Ohio court went on to reason the drug trafficking statute "sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved." *Id.* "As such, the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment." *Id.* A dissenting justice called the majority's reading of the statute "hypertechnical," and reasoned "the nature of the drug involved does not affect the identity of the offense, only the degree of the felony." *Id.* at 721 (Holmes, J., dissenting). It appears no other state has adopted the Ohio court's holding.

By contrast, another appellate court held the identity of a specific drug was not an element of the offense of distribution of a controlled substance. *Carter v. United States*, 591 A.2d 233, 234 (D.C. 1991). Interpreting the District of

Columbia's version of the Uniform Controlled Substances Act (UCSA), which is similar to RCW 69.50.401, the *Carter* court noted the provision "does not define the offense in terms of distinctions between the distributions of varying controlled substances." *Id.* (citing former D.C. CODE ANN. § 33-541(a)(1) (1988)). A separate provision "provides penalties for violations with respect to controlled substances in various classifications." *Id.* at 234 n.1 (citing former D.C. CODE ANN. § 33-541(a)(2)). The *Carter* court reasoned that the identity of the involved controlled substance was "material only as to an applicable penalty." *Id.*

Elaborating further, the *Carter* court noted the UCSA "seeks to prohibit the manufacture and distribution of any controlled drug, and it does not require that the offender know what the particular unlawful drug is that he is selling." *Id.* (citing *United States v. Lopez-Martinez*, 725 F.2d 471, 474 (9th Cir. 1984); *United States v. Pena Gonzalez*, 700 F.2d 196, 200-01 (5th Cir. 1983)). Accordingly, "all that is required under the UCSA is that one intentionally distribute a controlled substance." *Id.* at 235. Division Two of this court relied on *Carter* and several additional cases from other jurisdictions in holding the State was not required to allege and prove the defendant knew he was delivering a particular controlled substance. *Nunez-Martinez*, 90 Wn. App. at 254-56.

Turning now to Washington's Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW, we note the primary goal of statutory interpretation is to ascertain the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Absent ambiguity, this court derives the plain meaning "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. If the appellate court's initial inquiry shows the statute is ambiguous, it may construe the meaning of the statute with the aid of other sources such as legislative history. *Id.* at 12.

Washington's UCSA provides generally that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(a). A controlled substance is "a drug, substance or immediate precursor" listed in Schedules I through V of the statute. RCW 69.50.101(d). *See also* RCW 69.50.203-.212 (governing Schedules I through V).

The term of imprisonment imposed for violation of RCW 69.50.401(a) is 5 to 10 years depending on the specific controlled substance underlying the offense. RCW 69.50.401-(a)(1)(i)-(iii). The statute specifically provides that methamphetamine results in a 10-year sentence. RCW 69.50.401-(a)(1)(ii). By contrast, the anabolic steroid methandrostenolone is an example of a Schedule III controlled substance resulting in a five-year prison term. RCW 69.50.208(d)(14), .401(a)(1)(iii). In this connection, Mr. Goodman refers to the sentencing provisions for the different types of controlled substances as class B or C felonies. But, the statute does not use the class B and C terminology; rather, it sets forth a core offense, with the sentence determined in accordance with the specific controlled substance. RCW 69.50.401(a). Accordingly, manufacturing, delivering, or possessing with intent to deliver is unlawful with respect to all controlled substances. *Id.*

Mr. Goodman contends the specific name of the controlled substance is a necessary element of RCW 69.50.401(a) because of the different sentencing possibilities. But, Mr. Goodman's list of controlled substances containing the syllable "meth" undercuts his own argument because possession of any one of them is a crime under RCW 69.50.401(a). *See also* RCW 69.50.203-.212. Although the specific controlled substance the defendant allegedly manufactured, delivered, or intended to deliver may result in a different sentence, 5 or 10 years, the core crime is the same. RCW 69.50.401(a). Naming the specific controlled substance in an information alleging a single violation of RCW 69.50.401(a) is surplusage.

Given the above interpretation of the UCSA, we find *Carter* more persuasive than *Headley*. By its plain terms, RCW 69.50.401(a) prohibits the distribution of any controlled substance. *Carter*, 591 A.2d at 234. The State need not allege and prove the defendant knew the specific controlled substance he or she was distributing. *Nunez-Martinez*, 90 Wn. App. at 255-56. The identity of the controlled substance is material solely for determining the appropriate penalty for the "core" offense of delivery. *Robinson v. United States*, 697 A.2d 787, 790 (D.C. 1997); *Carter*, 591 A.2d at 234. Accordingly, Mr. Goodman's argument is unpersuasive.

■ Further, assuming solely for discussion the name of the specific controlled substance is an essential element of RCW 69.50.401(a), Mr. Goodman challenges the information for the first time on appeal. If the defendant challenges the information after the State has lost its opportunity to amend it, the reviewing court construes the charging document liberally. *Phillips*, 98 Wn. App. at 940-43; *see also Kjorsvik*, 117 Wn.2d at 103. The liberal *Kjorsvik* standard discourages "sandbagging," the potential defense practice of remaining silent in the face of a constitutionally defective charging document because a timely challenge will merely result in the State amending the information to cure the defect. *Kjorsvik*, 117 Wn.2d at 103; *Phillips*, 98 Wn. App. at 940; *see also* 2 WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 n.36 (1984).

■ Here, the liberal standard of review applies. *Kjorsvik*, 117 Wn.2d at 103; *Hopper*, 118 Wn.2d at 155. Consequently, the reviewing court applies a two-prong analysis: "(1) do the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so (2) can the defendant show he or she was actually prejudiced by the inartful language." *McCarty*, 140 Wn.2d at 425 (citing *Kjorsvik*, 117 Wn.2d at 105-06). "If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice." *Id*. at 425-26 (citing *Kjorsvik*, 117

Wn.2d at 105-06; *City of Auburn v. Brooke*, 119 Wn.2d 623, 636, 836 P.2d 212 (1992)).

■ ■ The amended information alleges possession of "meth." Mr. Goodman correctly notes many controlled substances incorporate the syllable "meth." *See* RCW 69.50-.203-.212. But, "meth" is a very commonly used abbreviation for methamphetamine; it appears constantly in news reporting, on and in daily conversation, both in and out of the courthouse, about the "meth problem." Accordingly, the term "meth" as used in the information can be fairly construed to mean methamphetamine rather than a lesser known controlled substance. The use of "meth" as an abbreviated "form" of "methamphetamine" satisfies the first prong of the *Kjorsvik* test. *Kjorsvik*, 117 Wn.2d at 105-06.

The second-prong of the *Kjorsvik* test recognizes that using "meth" in the information is "inartful or vague." *Id*. at 106. The better practice is to use "methamphetamine." But the flawed information alone will not result in reversal; Mr. Goodman must show actual prejudice also. *Id*.

In exploring whether the information caused actual prejudice, we "may look beyond the face of the charging document to determine if the accused actually received notice of the charges he or she must have been prepared to defend against." *Id*. "It is possible that other circumstances of the charging process can reasonably inform the defendant in a timely manner of the nature of the charges." *Id*.

Under this record, Mr. Goodman cannot claim he lacked due notice. The original information used the full term, "methamphetamine." CP at 46. The methamphetamine allegation is readily apparent throughout the pretrial record. The State did not file the amended information until two months later, on the date of the stipulated facts trial, and solely to add the school zone enhancement.

In light of the foregoing, Mr. Goodman's argument he lacked constitutional notice is unpersuasive.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY and KURTZ, JJ., concur.

Review granted at 149 Wn.2d 1002 (2003).