[No. 22885-8-II.   Division Two.   January 21, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. NICKI ALLEN PHILLIPS, *Appellant*.

*Lise Ellner,* for appellant (appointed counsel for appeal).
*John W. Ladenburg, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for respondent.

SEINFELD, J. — Nicki Allen Phillips did not challenge the information charging him with robbery in the first degree until after the State had rested its case, a time when the State was precluded from amending the information. Consequently, we construe the information liberally and find that it adequately advised Phillips that the crime included, as essential elements, (1) that he used or threatened to use force or fear to obtain or retain the stolen property; and (2) that the stolen property belonged to someone other than the defendant. Further, because Phillips was not prejudiced by the information's inartful language, we affirm.

## FACTS

After two women stole a purse from Diane Hargadine, she and another woman chased the robbers, who escaped by car. Later, Hargadine and other witnesses identified Phillips as the driver of the car, and said that he pointed a gun at both pursuing women.

The State charged Phillips with one count of robbery in the first degree while armed with a firearm, RCW 9A.56.-190, .200(1)(a), (b), RCW 9A.08.020. The information stated in pertinent part:

I, JOHN W. LADENBURG, Prosecuting Attorney for Pierce County, in the name and by the authority of the State of Washington, do accuse NICKI ALLEN PHILLIPS of the crime of ROBBERY IN THE FIRST DEGREE, committed as follows:

That NICKI ALLEN PHILLIPS, acting as an accomplice, in Pierce County, Washington, on or about the 31st day of October, 1997, did unlawfully and feloniously take personal property with intent to steal from the person or in the presence of Diane Hargadine, against such person's will by use or threatened use of immediate force, violence, or fear of injury to Diane Hargadine, and in the commission thereof, or in immediate flight therefrom, the defendant and/or an accomplice was armed with a deadly weapon or displayed what appeared to be a firearm or other deadly weapon, to-wit: a handgun contrary to RCW 9A.56.190, 9A.56.200(1)(a)(b) and 9A.08.020, and against the peace and dignity of the State of Washington.

After both sides rested, Phillips challenged the sufficiency of the charging document and moved to dismiss the case. He argued that the information failed to allege that he took property belonging to another person. The State then moved to amend the information to add that element.

Phillips opposed the motion to amend the information and, in addition, argued that the information omitted the element of the use of force or fear to obtain or retain the allegedly stolen property. The trial court denied both the motion to dismiss and the motion to amend the information. The jury then convicted Phillips as charged.

On appeal, Phillips claims that the information omitted two elements of first degree robbery: (1) the statutory element of the use or threatened use of force or fear to obtain or retain possession of stolen property; and (2) the nonstatutory element of property belonging to a person other than the defendant.

## I. STANDARD OF REVIEW

■ The Sixth Amendment to the United States Constitution and article I, section 22 (amend. 10) of the Washington Constitution require that a charging document include all essential elements of a crime, statutory and nonstatutory, so as to inform the defendant of the charges against him and to allow him to prepare his defense. *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); *State v. Kjors-*

*vik,* 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991); *State v. Ralph,* 85 Wn. App. 82, 84, 930 P.2d 1235 (1997). An information that fails to state an offense on its face is unconstitutional and must be dismissed. *State v. Leach,* 113 Wn.2d 679, 686-87, 782 P.2d 552 (1989).

■ When a defendant challenges the sufficiency of a charging document, the standard of review we apply depends upon the timing of the challenge. *Ralph,* 85 Wn. App. at 84. If a defendant challenges the sufficiency of an information after verdict, we construe the document liberally, asking whether: (1) the "necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Kjorsvik,* 117 Wn.2d at 105-06. But where there has been a challenge to the charging document "at or before trial," we construe the information strictly. *State v. Vangerpen,* 125 Wn.2d 782, 788, 888 P.2d 1177 (1995); *State v. Johnson,* 119 Wn.2d 143, 150, 829 P.2d 1078 (1992); *Kjorsvik,* 117 Wn.2d at 103; *Ralph,* 85 Wn. App. at 85. The strict standard of construction constitutes a "bright line rule mandating dismissal" when a charging document omits an essential element of the crime. *Johnson,* 119 Wn.2d at 150; *see also Ralph,* 85 Wn. App. at 85. Because a charging document containing such a defect is unconstitutional, the reviewing court must dismiss the charge "without prejudice to the State's ability to refile the charges." *Id.* at 86.

The differing standards discourage "what Professor LaFave has described as 'sandbagging,' " a "defense practice wherein the defendant recognizes a defect in the charging document but foregoes raising it before trial when a successful objection would usually result only in an amendment of the pleading." *Kjorsvik,* 117 Wn.2d at 103 (citing 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n.36 (1984)). Although the trial court must strictly construe an information challenged before or during trial, unless there is substantial prejudice

to the defendant, the State may amend the information to correct the defect at any time before the State rests its case. *Vangerpen*, 125 Wn.2d at 789; CrR 2.1(d). But after the State has rested, it may not amend an information "unless the amendment is to a lesser degree of the same crime or a lesser included offense." *Vangerpen*, 125 Wn.2d at 789 (citing *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987)). This prohibition extends to the amendment of informations omitting essential elements of the charged crime because an information lacking such elements "succeed[s] in charging no crime at all." *Vangerpen*, 125 Wn.2d at 795; *see also State v. Hull*, 83 Wn. App. 786, 802, 924 P.2d 375 (1996).

Here, the amendment sought by the State would not have resulted in a lesser degree of the same crime or a lesser-included offense. *Vangerpen*, 125 Wn.2d at 789; *Pelkey*, 109 Wn.2d at 491. Consequently, under *Vangerpen*, the trial court could not have granted the State's motion to amend the information; if it found the information defective, it could only have dismissed the case without prejudice to the State's right to recharge Phillips. *Vangerpen*, 125 Wn.2d at 792-93.

Thus, the interplay between the *Vangerpen/Johnson/Kjorsvik* preverdict language and the *Vangerpen/Pelkey* restrictions on amendments creates judicial gridlock where there is a challenge to the information after the State rests. If the reference to pre- and postverdict is read as controlling law, once Phillips challenged the information, even if it could pass liberal scrutiny, there was nothing either the State or the court could do to avoid the expensive, wasteful dismissal of the case without prejudice. This is exactly the type of situation that concerned the *Kjorsvik* court; it invites the defendant, aware of a constitutionally defective information, to wait until the State rests before raising his or her challenge.

We do not believe this outcome is consistent with the policies running through all the above cases; i.e., that the trial court should strictly construe the information during

the time when, assuming no substantial prejudice to the defendant, it has the ability to grant an amendment to cure any defect. On the other hand, the court is to liberally construe the information when the only other available remedy is dismissal. We share the concern mentioned by Justice Brachtenbach in his concurrence in *Leach*, 113 Wn.2d at 700: "I am disturbed, however, by the possibility that a defendant may be well aware at the outset of the proceedings that the charging document fails to state a crime, and yet maintain silence until appeal."

Nor do we believe that the *Vangerpen* or *Johnson* courts intended this result. Although both opinions contain language suggesting that "verdict" is the critical time at which the standard of review shifts from strict to liberal, this shifting standard was not essential to the outcome in either case. The defendants in *Johnson* raised their challenges before trial. In justifying the strict construction standard, the *Johnson* court noted that the prosecution could move under CrR 2.1 to amend the information "at any time prior to the final verdict, as long as substantial rights of the defendant are not prejudiced." 119 Wn.2d at 150. And in *Vangerpen*, although the defendant did not challenge the information until both sides had rested, there was no dispute as to the insufficiency of the information under either standard. Thus, the selection of the appropriate standard was unnecessary to decide the case. *Vangerpen*, 125 Wn.2d at 788.

Thus, it appears that the references to the time of verdict in *Vangerpen* and *Johnson* are dicta. Because use of strict construction at a time when neither the court nor the State can cure the defect, notwithstanding the absence of prejudice to the defendant, invites tardy challenges and sandbagging, we liberally construe the information before us, which the defendant challenged for the first time after both sides

rested. Upon applying this standard below, we conclude that the information is sufficient.

## II. Use of Force or Fear to Obtain or Retain Possession of Property

■ The statutory elements of robbery are: "(1) a taking of personal property; (2) from the person or in one's presence; (3) by the use or threatened use of force, or violence, or fear of injury; (4) such force or fear being used to obtain or retain the property." *State v. Strong*, 56 Wn. App. 715, 719, 785 P.2d 464 (1990); RCW 9A.56.190.[1] Although the information here stated that Phillips used or threatened to use force to take the property, it does not specifically state that Phillips used force to *retain* the property.

■■ The State correctly notes that it is not necessary to use the exact words of a statute in a charging document—words conveying the same meaning and import are sufficient. *Leach*, 113 Wn.2d at 689, *cited with approval in Kjorsvik*, 117 Wn.2d at 108 n.32. Here, the information alleged that Phillips displayed what appeared to be a deadly weapon "in immediate flight" from the robbery. This reference to his use of force while fleeing with the stolen goods is sufficient, under the liberal standard, to inform him that the State is contending that he used force to retain the property. Consequently, the information meets the first prong of the *Kjorsvik* standard. 117 Wn.2d at 105.

Under the second prong of *Kjorsvik*, Phillips must show that he was actually prejudiced by the inartfully drafted information. 117 Wn.2d at 106. Phillips has not made this

---

[1]RCW 9A.56.190 states: "A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear."

showing; the affidavit of probable cause adequately sets forth the allegation that Phillips threatened the victim with a firearm so that he and his accomplices could escape with the victim's purse. *Kjorsvik*, 117 Wn.2d at 111. And there was no contention that he was unaware of this element. Consequently, this challenge to the information fails.

III. PROPERTY BELONGING TO SOMEONE OTHER THAN DEFENDANT

■ Phillips, relying on *Ralph* and *State v. Bacani*, 79 Wn. App. 701, 902 P.2d 184 (1995), claims reversible error in that the information omits the essential nonstatutory element that the property stolen belonged to someone other than Phillips. The State, although critical of the controlling authority, *State v. Morgan*, 31 Wash. 226, 71 P. 723 (1903), concedes that the information fails under strict construction analysis.[2] But, as explained above, we liberally construe the information and, in so doing, find that it is sufficient.

The information alleged that Phillips "did unlawfully and feloniously take personal property with intent to steal from" the victim. To "steal" means to feloniously take the property of another. *See Ralph*, 85 Wn. App. at 85-86 (citing BLACK'S LAW DICTIONARY 1413 (6th ed. 1990); and *Bacani*, 79 Wn. App. at 705 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2232 (1969)). Liberally construed, an information that combines the terms "unlawfully and feloniously" with "intent to steal" fairly informs the defendant that the State is alleging that he stole property belonging to someone other than himself. *Kjorsvik*, 117 Wn.2d at 105. Nor has Phillips argued that he was prejudiced in any way by the language of the information. *Id.* at 111.

---

[2]*Morgan* predates the pre- and postverdict standards set forth in *Kjorsvik*. The defendant in *Morgan* raised his objection to the information before trial. 31 Wash. at 227. Although Divisions One and Three of this court recently criticized *Morgan*, both conceded that *Morgan*, combined with the strict construction standard set forth in *Johnson*, 119 Wn.2d at 150, mandated reversal in cases with similar defects.

## IV. Adequacy of Elements Instruction

Phillips also challenges the jury instruction containing the elements of robbery in the first degree. As with the charging document, he contends that the instruction was defective because it failed to include the nonstatutory element of property belonging to another. The State argues that the instructions viewed as a whole contain the missing element.

■ Because Phillips did not object to the instruction below, we review this issue only if it pertains to a manifest constitutional error. *State v. Scott*, 110 Wn.2d 682, 684-85, 757 P.2d 492 (1988); RAP 2.5(a)(3). Such error would exist if the instruction relieved the State of its constitutional burden of proving every essential element of the crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) ("It is reversible error to instruct the jury in a manner that would relieve the State of this burden."); *see also State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997); *State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984).

■ Instruction 14, the elements instruction, provided:

To convict the defendant of the crime of robbery in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 31st day of October, 1997, the defendant or an accomplice unlawfully took personal property from the person or in the presence of another;

(2) That the defendant or an accomplice intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5) That in the commission of these acts or in immediate

flight therefrom the defendant was armed with a deadly weapon or displayed what appeared to be a firearm; and

(6) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.[3]

Phillips, citing *State v. Eastmond*, 129 Wn.2d 497, 501-03, 919 P.2d 577 (1996), contends that the instruction's omission of the nonstatutory element that the property stolen belonged to another warrants automatic reversal. But the second element of instruction 14 required the State to prove that Phillips intended to commit theft of the property. "Theft" is a term "of sufficient common understanding to allow the jury to convict of robbery." *State v. Ng*, 110 Wn.2d 32, 44, 750 P.2d 632 (1988).

A reasonably educated jury would interpret "theft" according to its common meaning: "the felonious taking and removing of personal property with intent to deprive the rightful owner of it." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2369 (1969). Consequently, the common meaning of the word "theft," as used in the "to convict" instruction, contained the essential element that the property taken belonged to someone other than Phillips. Thus, the alleged defect is not a manifest constitutional error that we will consider for the first time on appeal. *Scott*, 110 Wn.2d at 684.

We affirm.

BRIDGEWATER, C.J., and MORGAN, J., concur.

---

[3]Instruction 14 is based on WPIC 37.02.