[Nos. 39514-2-II; 39524-0-II;    Division Two.    November 22, 2011.]
39520-7-II.

THE STATE OF WASHINGTON, *Appellant*, v. NYKOL KILIONA-GARRAMONE, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. JAMES FRANCIS GARRAMONE, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. PAULA FERRARA, *Respondent*.

18

*Michael K. Dorcy, Prosecuting Attorney*, for appellant.
*Clifford F. Cordes* (of *Cordes Brandt PLLC*), for respondents.

¶1 HUNT, J. — The State appeals the trial court's dismissal of charges against Nykol Kiliona-Garramone, James Francis Garramone, and Paula Ferrara (Defendants) for false verification of a welfare form, Count I of a multicount information. The State argues that the trial court erred in ruling that the information's omission of the statutory word "matter" rendered it constitutionally insufficient to give Defendants notice of charges against them. Defendants counter that (1) the trial court's dismissal of the charges is not an appealable order; and (2) even if the dismissal were appealable, the information was insufficient to advise them of the charges against them and, therefore, we should affirm. We reverse and remand.

## FACTS

¶2 From 2000 to 2004, Nykol Kiliona-Garramone, James Francis Garramone, and Paula Ferrara allegedly misrepresented Kiliona-Garramone's financial eligibility, as well as the extent of her blindness, on her disability application materials and various other documents pertaining to her public assistance eligibility. The State charged all three with false verification of a welfare form under former RCW 74.08.055 (1979) and RCW 9.94A.535(3)(d).[1] The information read:

> In the County of Mason, State of Washington, during the period of March 1, 2000 through January 30, 2004, the above-named Defendant . . . did commit FALSE VERIFICATION OF WELFARE FORM, a Class B felony, in that said defendant, being an applicant for or recipient of public assistance, did willfully make and subscribe any application, statement or other paper which contained or was verified by a written declaration made under the penalties of perjury and which he did not believe to be true and correct as to every *material*, contrary to [former] RCW 74.08.055 and against the peace and dignity of the State of Washington.

---

[1] The State also charged Defendants with first degree welfare fraud (Count II), which is not at issue in this appeal. *See* former RCW 74.08.331 (1979); former RCW 9A.56.030(1)(a) (1975); RCW 9.94A.535(3)(d).

Clerk's Papers (CP) (Kiliona-Garramone) at 86-87; CP (Ferrara) at 72-73; CP (Garramone) at 81-82 (emphasis added).

¶3 After a two-week bench trial, the State rested, and defense counsel moved to dismiss Count I, arguing for the first time that the State had filed a defective information in omitting the word "matter" from the statutorily defined crime as falsely verifying information that pertains to a "material matter."[2] The trial court dismissed Count I without prejudice, concluding:

> The Court does not find anything within the other portions of this charging Information that tells the Court what it is that needs to be "material." And cannot by a fair construction of what's already here in the charging language, read into what needs to be "material."

5 Report of Proceedings (RP) at 276 (emphasis added).[3] The State appeals.

## ANALYSIS

### I. MOOTNESS

¶4 A threshold issue is Defendants' argument that we should dismiss the State's appeal of the trial court's dismissal of Count I without prejudice as moot for lack of a "justiciable controversy" and, therefore, not appealable un-

---

[2] The State then moved to amend the information to correct the error, but the trial court denied the motion.

[3] More specifically, the trial court reasoned:

> The test in which the Court will use as to the standard at this point will be that set out under the [State v.] Phillips[, 98 Wn. App. 936, 991 P.2d 1195 (2000)] case. And that is the liberal standard. And this is used not only after verdict, or when it's first being brought up on appeal, but the Phillips case makes very clear that it is to be used when a challenge comes at a time the State is not permitted to amend the Information; specifically after the State has rested and a proposed amendment is not a request to charge a lesser crime or a lesser degree of [a] crime.

5 RP at 274.

der RAP 2.2. Br. of Resp'ts at 8-9. We disagree and hold that the trial court's dismissal of Count I is appealable.

¶5 Defendants are correct, however, that, in general, the State cannot appeal dismissals without prejudice because such dismissals do not discontinue or abate the case. *See State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003). Under RAP 2.2(b)(1), however, the State may appeal from a decision "that in effect abates, discontinues, or determines the case *other than by a judgment or verdict of not guilty*." (Emphasis added.) This is such a case.

¶6 Because the charged crimes here allegedly occurred between 2000 and 2004, the applicable statute of limitations would have expired in 2007. *See* RCW 9A.04.080(1)(h). The two-week bench trial concluded in May 2009, two years after the statute of limitations expired; thus, after the trial court denied the State's motion to amend and dismissed the information, the State could not refile the information[4] and bring Count I to trial. And, the trial court's 2009 dismissal of Count I without prejudice effectively finally determined these charges, rendering its dismissal of Count I against Defendants appealable under RAP 2.2(b)(1). *See Taylor*, 150 Wn.2d at 602. Having resolved the mootness issue, we now address the State's substantive arguments.

## II. SUFFICIENCY OF INFORMATION

¶7 The State argues that the information's omission of the single word "matter" did not prevent Defendants from

---

[4] Generally, after the State has rested its case, it cannot amend an information "unless the amendment is to a lesser degree of the same crime or a lesser included offense." *State v. Vangerpen*, 125 Wn.2d 782, 789, 888 P.2d 1177 (1995) (citing *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987)). *Vangerpen* does, however, recognize an exception where the amendment is merely to correct a " 'scrivener's' error" or "technical defects," but not to correct omission of "an element of the crime." 125 Wn.2d at 790.

Although here, the State attempted to amend the information to add an inadvertently omitted statutory word that, it contends, is not an element of the crime, the trial court denied the motion; thus, this issue remains the focus of Kiliona-Garramone's alternative argument in this appeal.

having sufficient notice of the crime charged in Count I—false verification of a welfare form. The State further argues that, under the liberal standard, omission of the word "matter" from the information neither precluded the otherwise sufficient information from apprising Defendants of the charges against them nor prejudiced them.

¶8 Defendants respond that omission of the term "matter" rendered Count I of the information insufficient to advise them properly of the charged crime, false verification of a welfare form. Beyond their bald assertion, however, Defendants do not explain how omission of the word "matter" constituted insufficient notice to them of the charged crime or how this omission in any way hindered their abilities to defend against the charge or caused any other sort of prejudice. We find the State's argument persuasive.

A. Standard of Review

¶9 Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a charging document must include all essential elements of a crime to inform a defendant of the charges against him and to allow preparation for the defense. *State v. Phillips*, 98 Wn. App. 936, 939-40, 991 P.2d 1195 (2000) (citing *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991)). A charging document is constitutionally sufficient if the information states each statutory element of the crime, even if it is vague as to some other matter significant to the defense. *State v. Holt*, 104 Wn.2d 315, 320, 704 P.2d 1189 (1985). To determine the essential elements of the charged crime, we look first to the statutory language. *State v. Tinker*, 155 Wn.2d 219, 221, 118 P.3d 885 (2005). In so doing, we read all the words of the statute together, and we construe the statute to avoid an absurd result. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009); *Young v. Estate of Snell*, 134 Wn.2d 267, 282, 948 P.2d 1291 (1997); *State v. Day*, 96 Wn.2d 646, 648, 638 P.2d

546 (1981); *State v. Chester*, 82 Wn. App. 422, 427, 918 P.2d 514 (1996).

¶10 When a defendant challenges the sufficiency of a charging document, our standard of review depends on the timing of the challenge. *State v. Ralph*, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997). If a defendant challenges the sufficiency of the information " 'at or before trial,' " we construe the information strictly. *Phillips*, 98 Wn. App. at 940 (quoting *State v. Vangerpen*, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995)). Under this strict construction standard, if a defendant challenges the sufficiency of the information *before* the State rests and the information omits an essential element of the crime, the court must dismiss the case " 'without prejudice to the State's ability to refile the charges.' "[5] *Phillips*, 98 Wn. App. at 940 (quoting *Ralph*, 85 Wn. App. at 86). If, however, a defendant moves to dismiss an allegedly insufficient charging document after a point when the State can no longer amend the information, such as when the State has rested its case,[6] we construe the information liberally in favor of validity.[7] *Phillips*, 98 Wn. App. at 942-43.

---

[5] If a defendant successfully challenges the sufficiency of the information *before* the State rests, the State may then amend the information to correct the defect, unless there is substantial prejudice to the defendant. *Phillips*, 98 Wn. App. at 940-41 (citing CrR 2.1(d)).

[6] *See supra* notes 3, 4. Trial courts may sometimes allow the State, after resting its case in chief, to amend an information to correct technical defects caused by scrivener's error, such as dates, statutory citations, or specifying a different manner of committing a crime. *See Vangerpen*, 125 Wn.2d at 790; *State v. DeBolt*, 61 Wn. App. 58, 61-63, 808 P.2d 794 (1991).

[7] These differing standards illustrate the balance between giving defendants sufficient notice to prepare a defense and discouraging defendants' "sandbagging," the potential practice of remaining silent in the face of a constitutionally defective charging document (in lieu of a timely challenge or request for a bill of particulars, which could result in the State's amending the information to cure the defect such that the trial could proceed). *See Kjorsvik*, 117 Wn.2d at 103; *Phillips*, 98 Wn. App. at 940 (citing 2 WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n.36 (1984)). *Compare State v. Johnson*, 119 Wn.2d 143, 150, 829 P.2d 1078 (1992) (applying the strict standard and concluding that the term "unlawfully" in the information was insufficient to allege "knowledge" element of criminal possession), *with Kjorsvik*, 117 Wn.2d at 108-11 (applying the liberal standard and

¶11 Because Defendants did not object to the information's sufficiency until after the State had rested its case, we apply the liberal standard set forth in *Kjorsvik* and construe the information in favor of its validity.[8] *See Phillips*, 98 Wn. App. at 942-43. Under this liberal standard of review, the trial court must decide (1) whether the necessary facts appear in any form, or by fair construction are found, in the charging document; and if so, (2) whether the defendant can show that he or she was nonetheless actually prejudiced by the inartful or vague language that he alleges caused a lack of notice. *Phillips*, 98 Wn. App. at 940 (quoting *Kjorsvik*, 117 Wn.2d at 105-06). This standard of review requires "at least some language in the information giving notice of the allegedly missing element(s)"; and, if the language giving notice is present, we then are required to determine whether the "inartful" or "vague" wording actually prejudiced the defendant. *Kjorsvik*, 117 Wn.2d at 106.

¶12 The first prong of the test—liberal construction of the charging document's language—focuses on the face of the charging document. The second, or "prejudice," prong of

---

holding that the information's term "unlawfully" sufficiently alleged the intent-to-steal element of robbery).

[8] The dissent in *McCarty*, although without precedential effect, nonetheless sheds light on the rationale behind this liberal standard when a defendant waits until after the State rests before objecting to the sufficiency of the information's charging language:

> A sporting theory of justice should not be the basis for our criminal jurisprudence. [5] If we are to apply our law in a commonsense fashion, without divorcing it from reality, we must keep in mind the salutary function of a charging document, and not confuse it with a precisely crafted jury instruction. I would affirm the jury's conviction of McCarty.

> [5] At oral argument, in answer to the question whether McCarty should have objected to the allegedly defective charge, counsel candidly answered it would not be in the best interests of a defendant to make such an objection. To paraphrase counsel's remarks: were a defendant to object, the State would simply amend the information to cure the defect. Curing the defect would deprive the defendant of an appealable issue, i.e., the defective information. We should not countenance and reward such cynical gaming of our criminal justice system by creating hypertechnical loopholes.

*State v. McCarty*, 140 Wn.2d 420, 435 & n.5, 998 P.2d 296 (2000) (Talmadge, J., dissenting).

the test, however, may look beyond the face of the charging document. *Kjorsvik*, 117 Wn.2d at 106.

### B. First Prong of *Kjorsvik* Test: Adequacy of Charging Language

█ ¶13 In applying the first prong of the *Kjorsvik* test, we look to the charging document *as a whole* to determine if the necessary elements of the charged crime can be fairly implied by the language it contains. *Kjorsvik*, 117 Wn.2d at 109.

#### 1. Essential elements of false verification of a welfare form

█ ¶14 Applying the first prong of the liberal *Kjorsvik* test, we hold that the information unequivocally charged Defendants with false verification of a welfare form. Former RCW 74.08.055 provides in pertinent part:

> Any applicant for or recipient of public assistance who wilfully makes and subscribes any application, statement or other paper which contains or is verified by a written declaration that it is made under the penalties of perjury and which he does not believe to be true and correct *as to every material matter* shall be guilty of a felony.

Former RCW 74.08.055 (emphasis added).[9] Thus, to prove that a defendant committed false verification of a welfare form, the State must prove the following elements: (1) the defendant made an application for public assistance; (2) the defendant signed the application, statement, or other paper under the penalty of perjury; (3) when the defendant signed the application, he or she did not believe the application was true and correct as to every material matter; and (4) the defendant acted willfully. *See* former RCW 74.08.055.

---

[9] The legislature amended former RCW 74.08.055 in 2003, but the amendment was not effective until July 1, 2004. This 2003 amended version does not control the present case because Defendants committed the crimes between March 1, 2000, and January 30, 2004. *See* Br. of Appellant at 2.

## 2. Scrivener's error omission did not affect notice

¶15 Here, in the third element of false verification of a welfare form, the information omitted the word "matter," which the remaining word "material" modifies in the corresponding statute. *See* former RCW 74.08.055.[10] This omission appears to have been a scrivener's error in the Washington Association of Prosecuting Attorneys' *Charging Manual* (2004), from which the State cut and pasted the charging language for Count I. Scrivener's errors and other technical defects that do not affect the substance of the charged offense do not prejudice the defendant and do not mandate dismissal. *Vangerpen*, 125 Wn.2d at 790 ("Convictions based on charging documents which contain only technical defects . . . usually need not be reversed.").[11]

¶16 Although mirroring the statutory language by including the word "matter" would arguably have been more precise, there is no requirement that the information contain the exact statutory language defining the crime of false verification of a welfare form. *See Kjorsvik*, 117 Wn.2d at 109. Here, despite omitting the word "matter," retention of the statute's adjacent word "material" provided "at least some language in the information giving notice" of the allegedly missing element, thus meeting the first prong of the *Kjorsvik* test. *See Kjorsvik*, 117 Wn.2d at 106. This charging language did inform Defendants about the essence of the third element—false representation about information that is "material," not something insignificant, to a

---

[10] Compare the information's language, "which he did not believe to be true and correct *as to every material*," with former RCW 74.08.055's language, "which he does not believe to be true and correct *as to every material matter*." CP (Kiliona-Garramone) at 86-87; CP (Ferrara) at 72-73; CP (Garramone) at 81-82 (emphasis added).

[11] *See also State v. Borrero*, 97 Wn. App. 101, 107-08, 982 P.2d 1187 (1999) (information containing a numerical statutory citation error was not constitutionally deficient because it was a "scrivener's error" and the information nonetheless properly apprised defendant of the "essential elements of the crime charged"), *aff'd*, 147 Wn.2d 353, 580 P.3d 245 (2002).

welfare application, such as income, the number of dependants living in the home, and the extent of the applicant's disability, all of which affect eligibility for public assistance under chapter 74.08 RCW. It is these material factors on which the legislature focused in defining the third element of the crime of false verification of a welfare form—whether the defendant made and signed a welfare application that he "d[id] not believe to be true and correct as to [a] material matter." *See* former RCW 74.08.055.

¶17 In the context of false verification of a welfare form, the statutory term "material" is used as an adjective.[12] Previously, the Supreme Court interpreted the adjective "material," albeit in the context of welfare fraud, to mean " 'affecting eligibility of need for [welfare] assistance.' " *State v. Knowles*, 79 Wn.2d 835, 839, 490 P.2d 113 (1971) (quoting former RCW 74.08.331 (1965)). The term "matter" refers simply to the already-mentioned noun-form materials—"application, statement, or other paper." *See* former RCW 74.08.055. In this sense, the word "matter" would have served only as a surplus word in the information, having no effect on the essential element of the crime that any misrepresentation on an application, statement, written declaration, or electronic record be "material" to the determination of Defendants' welfare eligibility. Furthermore, under the liberal *Kjorsvik* standard, the presence of the statutory word "matter" can be fairly implied from the information's allegation that Defendants "materially" misrepresented an "application, statement, or other paper," all of which are "matters." *See* former RCW 74.08.055.

---

[12] Defendants argue that it is unclear whether the term "matter," if unaccompanied by the term "material," as here, would function as a noun or an adjective. Br. of Resp'ts at 5. Considering the information as a whole, the trial court ruled that the term "material" in the information's phrase "true and correct as to every material" was "obvious[ly]" an adjective at the end on an incomplete sentence; a ruling that the Defendants do not challenge on appeal. 5 RP at 275. This hypothetical inquiry, however, is irrelevant to the issue before us: whether Defendants had notice of and were prejudiced by the wording of the charging document, which did not include the statutory word "matter" after the statutory word "material."

¶18 The statute's focus is on the "materiality" of the false representation.[13] We hold, therefore, that by alleging Defendants submitted applications they believed were not truthful "as to every material," the information gave them sufficient notice of the challenged third essential element of the crime of false verification of a welfare form under former RCW 74.08.055.

### 3. Information construed to favor validity; no showing of lack of actual notice

¶19 We further note that Defendants do not assert on appeal, nor do we find evidence in the record, that this alleged deficiency in the information caused them to be unaware of the charges against them. The term "matter" was apparently inadvertently omitted from both the original information, which Defendants received on May 1, 2006, well in advance of trial, and the first and second amended informations, which Defendants received on May 5 and 6, 2009, respectively. Yet, Defendants neither filed a bill of particulars to clarify the charge nor moved to dismiss the

---

[13] We respectfully disagree with the dissent's characterization of "matter" as an essential element. As we have previously noted, the essential element of false verification of a welfare form is making a materially false statement about a fact relevant to eligibility for public assistance under chapter 74.08 RCW, such as "need," "meet[ing] eligibility requirements," incarceration status, and substance abuse. RCW 74.08.025(1)(a), (c), (3); former RCW 74.08.025(4) (1997). The "materiality" of this type of fact differs significantly from a fact that is relatively inconsequential to a public assistance application, such as a slight misspelling of a street name or city that does not create a misleading address.

The dissent's hypothetical might apply if the State had alleged that Defendants committed the crime by making a false statement about a "matter," omitting the adjacent statutory word "material." But the dissent's hypothetical does not apply where, as here, (1) the State expressly placed Defendants on notice that the public assistance application had to be true and correct as to everything "material"; and (2) because they had made untrue and incorrect representations that were "material," the State charged them with false verification of a welfare form under former RCW 74.08.055, a felony. Use of the statutory word "matter" after the word "material" would not have significantly affected this notice to Defendants. On the contrary, "material" could have been followed by no word, as here, or any of the following words—"fact," "assertion," or "representation"—without deviating from the statutory definition of this crime. In short, the statutory word "material" is an essential component of the crime of false verification of a welfare form, but the word "matter" is not.

information for insufficiency anytime during more than two weeks of trial, during which the State submitted multiple documents as evidence of Defendants' false verification; and Defendants never contended that these documents were not "material."

¶20 Instead, Defendants waited until after the State rested its case on May 29 to challenge for the first time that the information was insufficient in omitting an "essential element." Because they waited until *after* the State rested its case to challenge the sufficiency of the information, we construe the information in favor of its validity. *See Phillips*, 98 Wn. App. at 942-43. We hold that (1) the word "matter" does not constitute an "essential element" of the crime of false verification of a welfare form; (2) nonetheless, the word "matter" can be fairly implied from the wording of the information when read as a whole; (3) there is no evidence in the record suggesting that Defendants did not have sufficient notice of the charges against them; and (4) the second amended information was sufficient to afford Defendants notice of the charged crime of false verification of a welfare form. The second amended information thus meets the first prong of the applicable *Kjorsvik* test.

### C. Second Prong of *Kjorsvik* Test: No Prejudice

¶21 Defendants' failure to meet the second prong of the *Kjorsvik* test is even clearer than their failure to sustain their challenge to the second amended information's adequacy under the first prong of the test. Under the second prong of *Kjorsvik*, after the first prong is met, Defendants must show that the vague or inartful language in the information actually prejudiced them. *Kjorsvik*, 117 Wn.2d at 106. As we have already discussed in Part II.B.1. of this opinion, the second amended information unequivocally charged Defendants with false verification of a welfare form. Furthermore, Defendants do not argue that the information's language, in general, or that its omission of the

word "matter," in particular, prejudiced them in any way. Consequently, even assuming, without agreeing, that omission of the word "matter" rendered the information's language vague, Defendants fail to meet the second prong of the *Kjorsvik* test because they do not show that this omission prejudiced them. *See Kjorsvik*, 117 Wn.2d at 106.

¶22 In summary, to warrant dismissal of an allegedly defective information after the State has rested, the *Kjorsvik* test requires either (1) insufficient notice *or* (2) vague and inartful language causing prejudice. We hold that Defendants failed to meet either prong. First, the information's omission of the word "matter" from Count I did not affect whether Defendants received sufficient notice of the charge against them. Second, Defendants have not even attempted to meet the second prong in that they do not argue that allegedly defective information prejudiced them in any way.[14] Therefore, Defendants' challenge to the sufficiency of the charging information fails the *Kjorsvik* test for dismissal of Count I.

¶23 Accordingly, we reverse the trial court's dismissal of Count I and remand to the trial court for further proceedings.

QUINN-BRINTNALL, J., concurs.

¶24 PENOYAR, C.J. (dissenting) — My view is that the trial court correctly dismissed this case under *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991). As the majority points out, the problem with the information here was that it accused the defendants of providing information that they did not believe to be true "as to every material" instead of "as to every material matter." In this case, "matter" matters because it clarifies whether the charge is that the defen-

---

[14] Moreover, our independent review of the record on appeal reveals no prejudice flowing from the inadvertent omission of the word "matter" from the information.

dants misrepresented facts that were important to the defendants' applications or whether the charge is simply that the defendants misrepresented anything at all in the application process. An example will illustrate the lack of clarity the missing word creates: Assume the defendants knowingly lied about their weight. Are they guilty? As charged in the information, they apparently are, since weight was in the materials the defendants filed. But if the State must prove that weight is a "material matter," guilt would turn on whether weight affects eligibility.

¶25 Under *Kjorsvik*, we should consider whether the missing "matter" appears in any form, or by fair construction can be found in the charging document. *Kjorsvik*, 117 Wn.2d at 105. Put another way, does this information " 'enable a person of common understanding to know what is intended' "? *Kjorsvik*, 117 Wn.2d at 110 (emphasis omitted) (quoting RCW 10.37.050(6)). In *Kjorsvik*, this prong of the test was satisfied because the defendant clearly would have known that he was accused of intending to steal money where the information alleged that the defendant unlawfully, with force, and against the victim's will, took the money while armed with a deadly weapon. *Kjorsvik*, 117 Wn.2d at 110. Here, however, I agree with the trial court that nothing in the balance of the information informs the defendants that only material false statements were alleged.[15]

¶26 The second prong of *Kjorsvik* is prejudice. *Kjorsvik*, 117 Wn.2d at 106. Because I believe that the defendants prevail under the first prong of the *Kjorsvik* test, I do not address prejudice. *See State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000) ("If the necessary elements are not

---

[15] At best, the defendants arguably had a hint that the language was incomplete because "as to every material" is a rather odd turn of phrase. But the balance of the information contains other stilted language, such as "in that the said defendant" and "did willfully make and subscribe." Clerk's Papers (CP) (Kiliona-Garramone) at 86-87; CP (Ferrara) at 72-73; CP (Garramone) at 81-82. In any case, a mere clue that something is missing does not tell the defendants what that something is.

found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice.").

¶27 I would affirm.

Reconsideration denied March 1, 2012.

Review denied at 174 Wn.2d 1014 (2012).