## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56734-2-II |
| Respondent, | |
| v. | |
| DEAN ERVIN PHILLIPS, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Dean E. Phillips appeals his conviction for second degree extortion. Phillips argues his charging documents were defective because they did not include all of the essential elements of the crime. Phillips also argues the State committed several acts of prosecutorial misconduct. Phillips raises additional grounds for review in a statement of additional grounds (SAG).

The State responds that the charging documents included all of the necessary elements, but concedes that the prosecutor committed prosecutorial misconduct and that Phillips should receive a new trial.

We hold that the State's charging documents were not defective. We also determine that Phillips is not entitled to any relief based on his SAG. However, we accept the State's concession regarding prosecutorial misconduct, reverse the conviction, and remand for a new trial.[1]

---

[1] Phillips represented himself throughout his trial. He asserts error to this pro se representation, alleging he did not knowingly, intelligently, and voluntarily waive his right to counsel. He also challenges the imposition of community custody supervision fees. Because Phillips' attorney status and any potential payment of community custody supervision fees will be addressed on remand at a new trial, we do not reach these issues.

FACTS

I. BACKGROUND

In March 2021, Phillips was pulled over by Sergeant Patricia Finch[2] for having expired tabs on his car. Phillips did not initially provide Sergeant Finch with his name or driver's license. Sergeant Finch requested additional units to the scene, and around the time additional officers arrived, Phillips provided Sergeant Finch with his passport. Using the passport, Sergeant Finch determined Phillips was driving with a suspended license. When informed that he was under arrest, Phillips refused to leave his car. Phillips was physically removed from the car and arrested for driving with a suspended license and obstructing a law enforcement officer.

A few weeks later, Sergeant Finch received two letters from Phillips, accusing Finch of committing crimes against him. The second letter, dated April 12, 2021, stated that Sergeant Finch could "cure [the] claim by paying [Phillips] five hundred thousand dollars," and gave Sergeant Finch three days to respond to the letter. Clerk's Papers (CP) at 99.

Sergeant Finch reported the letters to her superiors. As a result of an investigation by Detective Timothy O'Dell, Phillips was arrested for a second time and charged with second degree extortion.

II. PHILLIPS' CHALLENGE TO CHARGING DOCUMENTS

On October 26, 2021, Phillips, representing himself pro se, alleged that the State's charging documents failed to adequately identify the conduct that constituted a wrongful threat. Phillips claimed the charging documents were vague and his only threat was one of litigation.

---

[2] Sergeant Finch worked for the City of Centralia Police Department.

On November 24, 2021, the State filed an amended information.[3] In this amended information, the State charged Phillips with second degree extortion based on RCW 9A.56.130. The amended information stated,

> On or about and between the 25th day of March, 2021 through the 16th day of April, 2021, . . . the above-named defendant, by means of a threat to accuse any person to wit: Office[r] Patricia Finch, of a crime, or cause criminal charges to be instituted against said person, and/or to do any other act which is intended to harm substantially the person threatened with respect to her financial condition, did knowingly attempt to obtain or did obtain property or services from the owner thereof[.]

CP at 50.

III. PHILLIPS' TRIAL

The case proceeded to a jury trial with Phillips continuing to represent himself pro se.

A. STATE'S OPENING STATEMENT

During opening statements, the State began by discussing Phillips' traffic stop. The prosecutor described Sergeant Finch as "a mother, a wife. Just doing her job." Verbatim Rep. of Proc. (VRP) (Dec. 2, 2021) at 117. Phillips did not object to this statement.

B. DETECTIVE O'DELL'S TESTIMONY

The State called Detective O'Dell to testify. The prosecutor asked Detective O'Dell questions about Phillips' letters to Sergeant Finch and what Detective O'Dell gleaned from the letters:

---

[3] The November 24, 2021, document was entitled "Second Amended Information." CP at 50. Although two previous informations were filed (the initial "Information" filed on April 19, 2021 (CP at 1), and an "Amended Information" filed on May 7, 2021 (CP at 7)), Phillips appears to focus his argument on the Second Amended Information.

3

> Q. Okay. Let's a take a look at Exhibit No. 2; now, is there anything in that letter that causes you concern as well?
>
> A. Yes, sir.
>
> Q. Tell me what.
>
> A. Based on the account that she gave me and then my review of the letter, there appeared to be a pretty clear, what we'd call an "extortion" in the letter.
>
> Q. All right. And let me put that on the screen --
>
> MR. PHILLIPS: I object to the last comment, by the way.
>
> THE COURT: Objection is overruled.

VRP (Dec. 2, 2021) at 141. The prosecutor continued, asking Detective O'Dell questions about his conclusions after conversing with Sergeant Finch:

> Q. And in your discussions with Patricia Finch, what conclusions did you reach?
>
> A. The letter appeared to be an extortion of Sergeant Finch.
>
> MR. PHILLIPS: Objection. Making legal determinations.
>
> THE COURT: I'll sustain that objection.
>
> MR. PHILLIPS: Okay.
>
> Q. What was the extortion part of this?
>
> A. The extortion part would be if you don't pay X amount of dollars, you will be charged with the crimes that were listed.
>
> Q. Or accused of a crime, correct?
>
> A. Correct. Accused.

VRP (Dec. 2, 2021) at 143.

C. EXCLUSION OF MEDICAL RECORDS

Phillips testified in his own defense. During his direct examination, Phillips attempted to enter into evidence medical records from his time in custody after his extortion arrest. Phillips was type 1 diabetic, and the jail records included Phillips' blood glucose levels during his time in

4

custody. The records showed that Phillips' blood glucose levels (milligrams per deciliter) while he was in jail were in the high 100's four times, over 200 eleven times, and over 300 sixteen times.

The prosecutor objected to the admission of the jail medical records, arguing that they were not relevant to Phillips' original traffic stop for expired tabs. Phillips responded that a previous arrest had caused a diabetic emergency and that law enforcement should have been aware of it. Phillips claimed the jail medical records were evidence he was diabetic and his life was in danger whenever he was in custody, which were justifications for his letters to Sergeant Finch. The trial court determined the evidence was not relevant and denied admission of the jail medical records.

Without the benefit of jail medical records, Phillips continued with his testimony and explained to the jury that a normal blood glucose is 100 milligrams per deciliter. He then claimed that when he is in custody, his blood glucose would rise to over double and triple normal levels. Phillips expressed to the jury that going into custody put his life in danger and that he wrote letters to Sergeant Finch because he wanted to "create a dialogue" to avoid that risk to his life. VRP (Dec. 3, 2021) at 211.

D.  JURY INSTRUCTIONS

Following testimony, the trial court and the parties discussed jury instructions. The trial court adopted the State's proposed jury instruction 5, which discussed the elements for a second degree extortion conviction. It stated:

> To convict the defendant of the crime of extortion in the second degree, each of the following three elements of the crime must be proved beyond a reasonable doubt:
>
> (1)  That on or about and in between March 25, 2021 and April 16, 2021, the defendant knowingly obtained or attempted to obtain property or services of another by a wrongful threat;

5

(2)  That *such threat communicated, directly or indirectly, an intent*

  (a)  *to accuse any person of a crime or cause criminal charges to be instituted against any person* or

  (b)  to do any act that is intended to harm substantially the person threatened or another with respect to her financial condition;

and

(3)  That any of these acts occurred in the State of Washington.

CP at 68 (emphasis added).

E.  CLOSING ARGUMENTS AND VERDICT

During the State's closing arguments, the State raised the issue of Phillips' alleged diabetes and the lack of evidence about any medical issues while in custody.  The prosecutor argued:

> He wants you to believe, oh, poor me, I get put in jail, my diabetes acts up, and I'm in danger because they put me in jail; therefore, they should just let me go.

> That's not how it works.  The jail has doctors.  *We have no evidence from the defense that, you know, he had -- we don't have anything medical from him; there's no doctors' reports, anything like that to substantiate that*.

VRP (Dec. 3, 2021) at 257-58 (emphasis added).  Phillips, still acting pro se, did not object to this statement.

The jury found Phillips guilty of second degree extortion.  Phillips appeals.

ANALYSIS

I.  "WRONGFUL" ELEMENT INCLUDED IN CHARGING DOCUMENTS

Phillips argues that the State's amended information was insufficient because it did not include the essential element that Phillips had made a wrongful threat.  We disagree.

Under the Sixth Amendment and article I, section 22 of the Washington Constitution, charging documents must include all of the essential elements of the charged crime.  *State v. Pry,* 194 Wn.2d 745, 751, 452 P.3d 536 (2019).  " 'An essential element is one whose specification is

necessary to establish the very illegality of the behavior charged.' " *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The purpose of including all essential elements in the charging documents is to inform the defendant of the nature of the alleged crime and to allow them to prepare their case. *Id.* at 158-59.

The standard of review for challenges to the sufficiency of a charging document depends on the timing of the challenge. *State v. Ralph*, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997). When a defendant challenged the sufficiency of the information at or before his trial, we construe the language of the charging document strictly. *State v. Phillips*, 98 Wn. App. 936, 940, 991 P.2d 1195 (2000). But if the defendant moved to dismiss based on the charging document being insufficient after the State could no longer amend the information, we construe the information liberally in favor of validity. *Id.* at 940, 942-43. If a charging document is determined to be constitutionally defective, "[t]he proper remedy . . . is dismissal without prejudice to the State refiling the information." *State v. Simon*, 120 Wn.2d 196, 199, 840 P.2d 172 (1992).

The crime of extortion in the second degree requires the defendant to have committed "extortion by means of a wrongful threat as defined in RCW 9A.04.110(28) (d) through (j)." RCW 9A.56.130. These "wrongful threats" are communications of the intent to:

> (d) [] accuse any person of a crime or cause criminal charges to be instituted against any person; or
>
> . . . .
>
> (j) [] do any other act which is intended to harm substantially the person threatened or another with respect to his or her health, safety, business, financial condition, or personal relationships[.]

RCW 9A.04.110(28)(d), (j).

Phillips claims he challenged the amended information as failing to include the element of a wrongful threat to the trial court. Assuming his challenge to the trial court was sufficient to support strict construction of the amended information,[4] Phillips' challenge still fails.

The amended information stated that Phillips "threat[ened] *to accuse any person . . . of a crime, or cause criminal charges to be instituted against said person*, and/or [acted with intent] *to harm substantially the person threatened with respect to her financial condition*[.]"  CP at 50 (emphasis added).  Although the amended information did not specifically include the words "wrongful threat," it explicitly included the examples of threats listed as "wrongful" in the second degree extortion statute.  And these were the exact wrongful threats alleged at Phillips' trial.

Moreover, jury instruction 5 mirrored the language of the amended information by instructing that Phillips' wrongful threat must have threatened to accuse Sergeant Finch of a crime or to act with intent to harm her financial condition.  By including that language, the amended information fully informed Phillips of the nature of the crime with which he was charged.  Because the amended information contained the specific ways that Phillips' threat was alleged to be wrongful, Phillips' claim fails.

## II.  PROSECUTORIAL MISCONDUCT

Phillips argues that multiple acts by the State at his trial constitute prosecutorial misconduct.  He points to (1) the exclusion of the jail medical records and subsequent assertion at

---

[4] Phillips emphasizes that he made several different pro se challenges to the charging documents before the trial court, but none was clearly based on the argument he makes on appeal—the absence of the element of a wrongful threat.  Nevertheless, because the State does not directly challenge whether Phillips' arguments below raised the same issue he argues on appeal, we do not further address it.

closing argument that Phillips did not have medical evidence to support his arguments, (2) the questioning of Detective O'Dell, and (3) the arguably irrelevant characterization of Sergeant Finch.[5] The State concedes that each of these instances was improper and that Phillips should receive a new trial as a result. We accept the State's concession and remand for a new trial.

A. PROSECUTOR'S ACTIONS WERE IMPROPER

The defendant has the burden to show the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Addressing the three alleged instances of prosecutorial misconduct in turn, we first determine whether they were improper prior to addressing the issue of prejudice.

1. Exclusion of Medical Records and Subsequent Closing Argument

Phillips argues the State committed prosecutorial misconduct by arguing during closing that Phillips' claims about his medical issues in custody were unsubstantiated by any evidence when the State had previously succeeded in getting Phillips' jail medical records excluded from trial. The State concedes that the prosecutor's argument in closing was improper. And we agree.

Here, Phillips claimed he suffered medical complications from his diabetes when he had previously been in custody prior to his arrest by Sergeant Finch. Phillips alleged that his fear of

---

[5] Phillips also identifies another instance he alleges was prosecutorial misconduct—related to jury instruction 8. During trial, Sergeant Finch testified that she arrested Phillips because he committed a misdemeanor by failing to identify himself during the traffic stop. The State proposed, and the trial court gave, jury instruction 8 related to this issue. The State now concedes the jury instruction was inaccurate. But even if the jury instruction 8 was inaccurate and improper, Phillips does not explain how this supports an allegation of prosecutorial misconduct when it was the trial court's instruction, not the prosecutor's. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (this court will not consider issues that are not supported by argument).

suffering further medical complications was the reason that he decided to write his letters to Sergeant Finch. Phillips attempted to introduce jail medical records showing that when he was in custody, his blood sugar was regularly elevated to over two and three times normal, healthy levels. The prosecutor successfully persuaded the trial court to exclude these jail medical records.

But then, during closing arguments, the prosecutor cast doubt on Phillips' assertions that he experiences medical complications from his diabetes while in custody. Notwithstanding the existence of the excluded jail medical records that, at least arguably, supported Phillips' arguments, the prosecutor stated,

> He wants you to believe, oh, poor me, I get put in jail, my diabetes acts up, and I'm in danger because they put me in jail; therefore, they should just let me go. . . . We have no evidence from the defense that, you know, he had -- we don't have anything medical from him; there's no doctors' reports, anything like that to substantiate that.

VRP (Dec. 3, 2021) at 257-58.

As the State concedes, the prosecutor's assertion that there was no medical evidence, in this context, was wholly improper.

2. Questioning of Detective O'Dell

Phillips next argues that the prosecutor's questioning of Detective O'Dell elicited improper opinion testimony. The State concedes this questioning was improper. And we agree.

Generally, a witness may not opine during testimony on the defendant's guilt. *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009). When analyzing whether there was impermissible opinion testimony, we consider five factors:

> "(1) the type of witnesses involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact."

10

*Id.* at 332-33 (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)). And police officers' testimony may carry a " 'special aura of reliability' " and therefore be especially prejudicial to a defendant. *Id.* at 331 (quoting *Kirkman*, 159 Wn.2d at 928).

Here, the prosecutor first asked Detective O'Dell the general question of what conclusion he reached after speaking to Sergeant Finch about Phillips' letters. Detective O'Dell responded that the letter "appeared to be an extortion of Sergeant Finch." VRP (Dec. 2, 2021) at 143. Phillips objected to Detective O'Dell's comment, and the trial court sustained the objection.

But rather than ending this line of questioning, the prosecutor continued on, asking, "What was the extortion part of this?" VRP (Dec. 2, 2021) at 143. Detective O'Dell responded that "the extortion part" was that Phillips threatened to accuse Sergeant Finch of crimes if she did not pay him the requested dollar amount. VRP (Dec. 2, 2021) at 143.

By linking his personal conclusion of guilt to the charged crime of extortion, Detective O'Dell's testimony was an improper opinion. And his law enforcement position likely gave his testimony a "special aura of reliability" to the jury.

Especially given the prosecutor solicited this testimony *after* Phillips' initial objection was sustained by the trial court, such questioning was improper.[6]

3. Irrelevant Characterization of Sergeant Finch

Phillips also argues that the State committed misconduct when talking about Sergeant Finch during opening statements, specifically stating she was " 'a mother, a wife,' " who was

---

[6] The State concedes that this instance of improper questioning action was prejudicial and, by itself, warrants reversal of Phillips' conviction.

" '[j]ust doing her job.' " Br. of Appellant at 46 (quoting VRP (Dec. 2, 2021) at 117). The State concedes this statement was improper. And we agree.

The State cannot encourage a jury to convict a defendant based upon emotion, rather than the evidence presented, by appealing to the passions of the jury. *State v. Berube*, 171 Wn. App. 103, 118-19, 286 P.3d 402 (2012), *review denied*, 178 Wn.2d 1002 (2013). " 'A trial in which irrelevant and inflammatory material is introduced, which has a natural tendency to prejudice the jury against the accused, is not a fair trial.' " *Id*. at 119 (quoting *State v. Miles*, 73 Wn.2d 67, 70, 436 P.2d 198 (1968)).

Here, the prosecutor's characterization of Sergeant Finch was not relevant to either her role as a law enforcement officer or her status as the alleged victim in this case; it was likely designed to appeal to the passions of the jury. As conceded by the State, this irrelevant characterization of Sergeant Finch was improper.

B. IMPROPER EVENTS RESULTED IN CUMULATIVE PREJUDICE

We next consider whether these three instances of improper conduct by the State unfairly prejudiced Phillips. Phillips argues that all these instances cumulatively prejudiced him sufficiently to warrant a new trial. The State concedes Phillips should receive a new trial. And we agree.

The standard of review to determine whether the defendant was prejudiced depends on whether the defendant objected to the conduct during the trial. *See State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.*

"If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. Under this heightened standard, the defendant must show both that a curative instruction would not have obviated the prejudicial effect on the jury and the misconduct resulted in prejudice that had a substantial likelihood of impacting the jury's verdict. *Id.* at 761.

But even when one instance of improper conduct is not prejudicial, "the cumulative effect of repetitive prosecutorial misconduct may be so flagrant that no instruction or series of instructions could erase their combined prejudicial effect." *State v. Cook*, 17 Wn. App. 2d 96, 106, 484 P.3d 13 (2021).

Here, Phillips did not directly object during any of the three instances of improper conduct. First, Phillips failed to object to the prosecutor's improper closing argument about the absence of medical evidence. Second, although Phillips initially objected to the State's improper questioning of Detective O'Dell about whether his letters constituted extortion, Phillips failed to object to the improper follow-up questions. And finally, Phillips failed to object to the improper characterization of Sergeant Finch.

Although the State suggests that the questioning of Detective O'Dell could, by itself, require a new trial, neither party provides an actual analysis of whether any one of these instances, in isolation, was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.

But even if these instances do not, standing alone, rise to the level of being incurable misconduct, collectively they do. Put together, the State's conduct resulted in the jury (1) hearing

there was no medical evidence when the prosecutor knew there was, (2) hearing the opinion from a law enforcement officer that Phillip's letters constituted extortion, and (3) hearing a warm, but irrelevant, description of the alleged victim, Sergeant Finch, designed solely to engender sympathy. We accept the State's concession and hold that, cumulatively, these instances are so flagrant that no instruction or series of instructions could erase their combined prejudicial effect. We remand for a new trial.

## III. PHILLIPS' SAG CLAIMS

Phillips asserts 19 additional grounds for review in his SAG—18 of which fail to inform us of the nature and occurrence of the alleged errors, including allegations related to federal copyright law, the First Amendment, the Second Amendment, standing for the State to bring a case against Phillips, and the refusal of the prosecutor to answer interrogatories. We determine each of those 18 grounds fails. RAP 10.10(c) (SAG claims are required to inform the court of the nature and occurrence of the alleged errors).

The only potentially cognizable ground in Phillips' SAG is an allegation that his speedy trial rights were violated. However, our record for review does not include any trial setting orders or related continuance orders. Without these orders, the record is insufficient to review whether a violation of Phillips' speedy trial right occurred. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (the court "cannot review" claims that rely on evidence outside of the appellate record).

## CONCLUSION

We hold the documents charging Phillips with second degree extortion were not defective. We also determine that Phillips is not entitled to relief on his SAG claims. However, we accept

No. 56734-2-II

the State's concession that Phillips is entitled to a new trial due to prosecutorial misconduct. Thus, we reverse Phillips' conviction and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

VELJACIC, J.